United States v. Osuba

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2022
No. 20-3322

UNITED STATES OF AMERICA,
*Appellee*,

*v.*

MATTHEW R. OSUBA,
*Defendant-Appellant*.

---

On Appeal from a Judgment of the United States District Court for
the Northern District of New York.

---

ARGUED: FEBRUARY 27, 2023
DECIDED: APRIL 17, 2023
AMENDED: MAY 4, 2023

---

Before: CALABRESI, PARK, and NARDINI, *Circuit Judges*.

---

A jury convicted Matthew Osuba of violating 18 U.S.C. § 2251(a), which prohibits using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of

that conduct. The jury also convicted Osuba of possessing and distributing child pornography, in violation of 18 U.S.C. § 2252A, based on different images found on his phone. The United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*) sentenced Osuba to 70 years in prison. Osuba argues that the evidence was insufficient to convict him on the production charge, that the district court erred in applying a sentencing enhancement based on a finding that he was a repeat and dangerous offender, and that his sentence was substantively unreasonable. Finding no error, we AFFIRM Osuba's conviction and sentence.

---

CARINA H. SCHOENBERGER, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

RICHARD D. WILLSTATTER (Theodore S. Green, *on the brief*), Green & Willstatter, White Plains, NY, *for Defendant-Appellant*.

---

WILLIAM J. NARDINI, *Circuit Judge*:

A jury found Matthew Osuba guilty of one count of using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct in violation of 18 U.S.C. § 2251(a), (e); one count of possessing child pornography in violation

of 18 U.S.C. § 2252A(a)(5)(B); and one count of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). The United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*) sentenced Osuba to a total of 70 years in prison. Osuba challenges his conviction on the first count, arguing that his conduct—filming himself masturbating toward a clothed, sleeping minor—was not criminal under the statute. He also challenges both the imposition of a sentencing enhancement for repeat and dangerous offenders and the substantive reasonableness of his sentence. Because Osuba took actions designed to depict the minor as the passive recipient of his sexual actions, we conclude, on the particular facts of this case, that there was sufficient evidence for a jury to conclude beyond a reasonable doubt that Osuba used the minor to engage in sexually explicit conduct. We further conclude that the evidence supported the enhancement and that the sentence was not shockingly

high in light of Osuba's conduct. Accordingly, we affirm the judgment of the district court.

## I.  Background[1]

In August or September 2018, Matthew Osuba was in the living room of his girlfriend's house, talking to someone over Kik Messenger, an instant-messaging app. His girlfriend's seventeen-year-old daughter was sleeping, fully clothed, on the couch in the same room, with her face turned away from him. At some point, Osuba turned on his camera and recorded two short videos. They show him masturbating close to the minor—first sitting or lying near the couch, then standing over the minor and ejaculating toward her. He was "getting off," he later said, to "the image of [the teenage girl] on the couch." Gov't. Ex. 18-C at 2:03. "I came on her," he told the other Kik user, attaching the videos.[2] Gov't. Ex. 18-J at 0:12.

---

[1] Unless otherwise specified, we rely on the district court's factual findings, which were in turn adopted from the statement of facts in the Presentence Investigation Report.

[2] Apparently, Osuba's ejaculate just missed the minor's arm.

Osuba frequently discussed child abuse on Kik. In one conversation, with Lisbet Fjostad, a woman he met on the app, Osuba claimed to have sexually abused a four-year-old minor, E, on multiple occasions, giving graphic details of his physical contact with her genitalia.[3] In a different Kik conversation, this time with an undercover officer, Osuba recounted yet more abuse of E, again describing the same sort of direct sexual contact. "I mostly do it when she is sleeping," he said. Presentence Investigation Report ¶ 17.

Osuba also used Kik to send Fjostad pornographic images of children. She reported three such images to law enforcement, one of which Osuba claimed showed a child he had abused. When officers, tipped off by Fjostad, searched Osuba's cell phone, they found even more pornographic images of children. Questioned by the police, Osuba described his statements on Kik as mere fantasies and denied having actually abused any children.

---

[3] Pursuant to Federal Rule of Criminal Procedure 49.1(a)(3), we refer to minor victims and their relatives (other than Osuba) by their initials.

Osuba was charged with sexual exploitation of a child by producing a visual depiction in violation of 18 U.S.C. § 2251(a) (Count One, "the production charge"); distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), 2252A(b)(1), and 2256(8)(A) (Count Two); and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A) (Count Three). After a three-day trial, the jury convicted Osuba on all counts.

Osuba's Presentence Investigation Report (PSR) calculated that his offense conduct and relevant conduct, considered together, merited a total offense level of 43, the highest possible, under the United States Sentencing Guidelines. That calculation included several upward adjustments that Osuba does not challenge on appeal, and one upward adjustment that he does: an enhancement under U.S.S.G. § 4B1.5(b)(1), which adds five levels when the defendant is a repeat and dangerous sexual offender. To establish the pattern of sexual abuse necessary for the enhancement, the PSR relied on the

two separate videos underlying Osuba's production conviction. The PSR also noted its conclusion that Osuba had sexually abused E on several occasions.

In addition to Osuba's Kik conversations, the evidence that Osuba abused E included police interviews with E; her brother, B; and their mother, K. Both E and B initially denied having been abused by anyone. But after K raised further concerns, E told the police in a second interview that Osuba had used a sexual device on her. And B, although he at first called the story "a lie," later described a device belonging to Osuba that matched E's description. Osuba told the police that he fantasized about having sex with E but denied having abused her.

Osuba's sentencing memorandum included a copy of a 2018 child protective services report stating that allegations Osuba had sexually abused E were "unsubstantiated," and that the agency had found no credible evidence that a child was abused or maltreated.

Sealed App'x 17–18. Osuba claimed that his Kik conversations reflected "fantasies and not actual events." *Id.* at 3.

The district court adopted the factual information and the Guidelines calculation set forth in the PSR. The court found by a preponderance of the evidence that Osuba had "sexually abused multiple minors." App'x 202–03. Osuba's statements on Kik, the court said, "corroborate[d] the sexual abuse of" E. *Id.* at 203. The court also highlighted videos found on Osuba's laptop showing him masturbating into the underwear of his ex-girlfriend's underage daughter, child pornography found on Osuba's devices, and Osuba's internet searches for child pornography. Osuba had not accepted responsibility or expressed remorse, the court concluded, and he was "dangerous to children," "dangerous to [himself]," and "dangerous to the public." *Id.* at 200, 209. Reasoning that the shock of arrest had deterred Osuba "for the present," the court concluded that its job was to deter him "in the future." *Id.* at 200–01. The court sentenced Osuba

8

to 360 months on Count One, 240 months on Count Two, and 240 months on Count Three, to run consecutively for a total of 840 months of imprisonment. Osuba now appeals.

## II. Discussion

Osuba challenges the sufficiency of the evidence for his conviction on Count One, arguing that only he (and not the minor) engaged in sexually explicit conduct on the video, and that he therefore did not violate the statute. He also argues that the district court erred in finding that he abused E, and thus in applying the five-level sentencing enhancement. Finally, Osuba contends that his lengthy sentence was substantively unreasonable. We disagree with Osuba on each point.

### A. Sufficiency of the Evidence

We review a challenge to the sufficiency of the evidence supporting a conviction *de novo*. *United States v. Gershman*, 31 F.4th 80, 95 (2d Cir. 2022). A defendant who brings such a challenge "bears a heavy burden." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir.

9

2003) (citation and internal quotation marks omitted).  Because of the strong deference to which jury verdicts are entitled in our justice system, we must "draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict."  *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021).  A conviction will stand so long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Osuba was convicted under 18 U.S.C. § 2251(a), which mandates a minimum 15-year prison term for:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . .[4]

---

[4] The statute's jurisdictional element further requires that the offender must know or have reason to know that the visual depiction will be transmitted in interstate commerce, be produced using materials that have traveled in interstate commerce, or actually be transmitted using a means or facility of, or a means or facility affecting, interstate commerce.  18 U.S.C. § 2251(a).  That element is not disputed here.

"[S]exually explicit conduct" includes "actual or simulated" "masturbation" and actual or simulated "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(iii), (v).

The question before us is whether Osuba used the minor to engage in sexually explicit conduct when he filmed himself masturbating toward her.[5] Osuba argues, and the government agrees, that the word "uses" requires the minor, not merely the defendant, to "engage" in sexually explicit activity. Where the parties disagree is whether, here, the minor was so "engaged."

To begin with, we agree with the parties that § 2251(a) requires the minor to engage in the specified conduct. The phrase "[a]ny person who . . . uses . . . any minor to engage in . . . any sexually explicit conduct" might seem, if read in isolation, to require engagement only by "any person," so long as the perpetrator "uses"

---

[5] Osuba raises no challenge to the jury instructions, and our review is thus limited to the sufficiency of the evidence.

11

the minor to have that person engage in the conduct. But the rest of the provision makes clear that, as the Seventh Circuit has held, the minor must also engage in the sexually explicit activity. *See* 18 U.S.C. § 2251(a); *United States v. Howard*, 968 F.3d 717, 721–22 (7th Cir. 2020).

In a statutory list, surrounding words may cabin a particular word's meaning. *McDonnell v. United States*, 579 U.S. 550, 568–69 (2016) (*noscitur a sociis*). The other verbs in § 2251(a)'s list ("employs," "persuades," "induces," "entices," and "coerces") all require the minor to engage in sexually explicit conduct. If a friend tells you she respects "any person who persuades a child to eat vegetables," it is the child, not the persuader, who must have polished off the broccoli. Substitute "employs," "induces," "entices," or "coerces" for "persuades" and the result is the same. Reading "uses" in § 2251(a) to allow the explicit conduct to be only that of the defendant or some third party, but not the minor, would give the provision "a jarringly different meaning." *Howard*, 968 F.3d at 722.

12

What the text of the provision suggests, the rest of the statute confirms. Section 2251(a) was enacted as part of the Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95–225, § 2(a), 92 Stat. 7, 7 (1978). That act targeted the "production[,] . . . receipt, transmission, and possession of child pornography." *United States v. Holston*, 343 F.3d 83, 85 (2d Cir. 2003). Its provisions penalize advertising, § 2251(d)(1); transporting, § 2252(a)(1)(A); receiving or distributing, § 2252(a)(2)(A); selling, § 2252(a)(3)(B); and possessing or accessing, § 2252(a)(4)(B), material involving, in each instance, "the use of a minor engaging in sexually explicit conduct." Statutory interpretation is a "holistic endeavor," and the consistent need for the minor to engage in sexually explicit conduct suggests that § 2251(a) should be read to match its siblings. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988); *see also United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (words should be read in light of "the provisions of the

13

whole law," its "object," and its "policy" (citation and internal quotation marks omitted)); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167–69 (2012) (whole-text canon).

This textual question does not, however, end the case. We must also determine whether the minor here did, in fact, "engage in" sexually explicit conduct. 18 U.S.C. § 2251(a). Engagement, of course, can be active or passive. To take an extreme example of the latter, if a defendant raped a drugged, unconscious child, the child would undoubtedly have been engaged in sexual activity, even though only as a "passive participant." *See United States v. Heinrich*, 57 F.4th 154, 159 (3d Cir. 2023). Similarly, because § 2256 defines sexually explicit conduct to include "actual or simulated" activity, if a sleeping child is "used or manipulated in such a manner as to make it *appear* that she is engaging in sexually explicit conduct, then the statute is violated." *United States v. Levy*, 594 F. Supp. 2d 427, 443 (S.D.N.Y. 2009). As the

Third Circuit has noted, it would be "absurd" to read the statute "to protect children actively involved in sexually explicit conduct, but not protect children who are passively involved in sexually explicit conduct while sleeping, when they are considerably more vulnerable." *United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013); *see also United States v. Lohse*, 797 F.3d 515, 520–21 (8th Cir. 2015) (jury could find that the defendant "quite literally used [a sleeping child] as a sexual object").

Given the facts of this case, we hold that a rational jury could have concluded, beyond a reasonable doubt, that Osuba used the minor to engage in sexually explicit conduct. Osuba's sexual activity was wholly directed toward her, in a way that rendered her a participant (albeit a passive one) in that activity. He set up the camera to show her right next to him. He ejaculated toward her, missing her arm only narrowly. He told the Kik user to whom he sent the videos, "I came on her." Gov't. Ex. 18-J at 0:12. He said that he was "getting

15

off" to her presence. Gov't. Ex. 18-C at 2:03. By creating a video depicting a form of "sexually explicit conduct" enumerated in § 2256(2)(A) (here, masturbation), the intended consummation of which was visibly directed toward a minor who was physically present, Osuba crossed the line from "a simple display of adult genitals around a sleeping minor" to showing his victim as "an inanimate body" upon which he was acting sexually. *Lohse*, 797 F.3d at 521.

A recent decision of the Eleventh Circuit supports our holding. In *United States v. Dawson*, the court held that a defendant had used a minor to engage in sexually explicit conduct under § 2251(a) when he filmed himself covertly masturbating next to a clothed and conscious, but apparently oblivious, child. *See United States v. Dawson*, No. 21-11425, 2023 WL 2781361 (11th Cir. Apr. 5, 2023). The child, the court reasoned, "was passively involved in [the defendant's] sexually explicit conduct by serving as the object of [his] sexual desire." *Id*. at

16

*8. *Dawson* construed the text of § 2251(a) differently than we do, concluding that "the minor need not be the one engaging in sexually explicit conduct," and that "the minor's passive involvement . . . is sufficient." *Id.* at *7. The court read the provision's six verbs as lying on a "spectrum" from those, such as "coerces," that suggest "active engagement" to those, such as "employs" and "uses," that suggest "passive involvement." *Id*. at 8. We are not convinced that this is the best reading of the statute, because a person might "coerce" a child's passive engagement, perhaps by drugging her and engaging her in sexually explicit conduct, or "employ" a child's active engagement, perhaps by paying her to participate. But the Eleventh Circuit recognized that, even assuming § 2251(a) "requires the minor to engage in sexually explicit conduct," it was enough that the defendant made the minor "passively engage." *Id*. at *8 n.7.

Decisions of the Third and Eighth Circuits point in the same direction. *See Finley*, 726 F.3d at 495 (jury could find a defendant

17

"'use[d]' a minor to engage in sexually explicit conduct without the minor's conscious or active participation"); *Lohse*, 797 F.3d at 520–21 (sleeping child used "as a sexual object"). Although both cases involved physical contact between the defendant and a sleeping minor, our sister circuits recognized that a minor may be used to engage in sexually explicit conduct passively.

Osuba emphasizes that his conduct did not involve physical contact. But physical contact is not a necessary component of passive engagement. A nude, sleeping child has passively engaged in "lascivious exhibition," for example, when someone photographs her genitals without touching her. *See United States v. Wolf*, 890 F.2d 241, 246 (10th Cir. 1989). Even without physical contact, Osuba's conduct was so directed toward the minor that it engaged her, albeit passively, in sexually explicit conduct.

Osuba also argues that we are breaking with the Seventh Circuit, which in *Howard* vacated a conviction under § 2251(a) for

18

masturbating over a sleeping child. *See Howard*, 968 F.3d 717. We agree with *Howard* that the minor must engage in the sexually explicit conduct. We part ways on the bottom line because we address a question *Howard* did not reach, explaining not only that the minor must engage in sexually explicit conduct, but also how the minor may do so. In *Howard*, the government's sole argument was that the statute required only the defendant, not the minor, to engage in the proscribed conduct. *See* Appellant's Br. at 16–28, *United States v. Howard*, 968 F.3d 717 (2020) (No. 19-1005). Having rejected this "sexual object" theory, the Seventh Circuit declined to consider alternatives. *See Howard*, 968 F.3d at 723 ("The government staked its entire case for conviction on a mistaken interpretation of the statute."). But the court acknowledged that different legal arguments might have saved the government. *See id.* at 723 n.3 (noting that the defendant appeared to touch his penis to the minor's lips, which might have constituted engaging the minor in oral sex, had the

19

government presented such a theory). Whether the Seventh Circuit would have agreed with the argument presented by the government in our case, and upon which we now rely, we do not know. But we take a step *Howard* did not, holding that on the facts of this case, the minor's passive involvement as the intended recipient of Osuba's actions suffices to constitute her "engage[ment]" under § 2251(a). *Cf. Howard*, 968 F.3d at 722 (requiring "some action by the offender to cause the *minor*'s direct engagement in sexually explicit conduct").

Like the *Howard* court, Osuba worries that the government's reading would make a criminal out of someone who filmed himself engaged in sexual activity while children can be heard playing outside, or even while merely thinking about children, were he to later confess that the children played a central role in his sexual experience. *See id.* at 721 (positing similar hypotheticals). But the text of the statute forecloses such interpretations. The "visual depiction" must be "of" the sexually explicit conduct in which the minor engages

(regardless of whether that engagement is active or passive on the part of the minor). 18 U.S.C. § 2251(a). That element was satisfied here.

Osuba also argues that his conduct cannot have fallen within § 2251(a) because the child was clothed. But that argument proves too much. On Osuba's theory, someone who filmed himself engaging in oral sex with a clothed and sleeping child would not have used the child to engage in sexual activity—a result that defies the plain text of the statute. *See Howard*, 968 F.3d at 723 n.3.

We note, moreover, that our holding is a narrow one. Although we conclude that Osuba's conduct sufficed under § 2251(a), sufficiency of the evidence determinations necessarily turn on the specific facts of each case. We do not purport to delineate every set of acts that will satisfy the statute.

## B. The Sentencing Enhancement

"We review the reasonableness of a district court's sentence under a deferential abuse of discretion standard." *United States v.*

*Hernandez*, 604 F.3d 48, 52 (2d Cir. 2010). This review "encompasses two components: procedural review and substantive review." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). A district court commits procedural error when it fails to properly calculate the Guidelines range or rests its sentence on a clearly erroneous finding of fact. *Id.* at 190. The district court must find facts relevant to a sentencing enhancement by a preponderance of the evidence. *United States v. Mi Sun Cho*, 713 F.3d 716, 722 (2d Cir. 2013).

We review unpreserved objections for plain error. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *see Davis v. United States*, 140 S. Ct. 1060, 1061 (2020). Osuba therefore must establish that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the

error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (cleaned up).[6] When considering the first and second prongs—whether there has been error at all, and whether that error was obvious—with respect to factual findings, we ask whether the district court "clearly erred." *United States v. Tulsiram*, 815 F.3d 114, 120 (2d Cir. 2016). Under this deferential standard, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety," we "may not reverse" even if we are "convinced that had

---

[6] Some of our cases have suggested that a "relaxed" plain error standard is appropriate in sentencing appeals, in certain circumstances, such as where the defendant lacked prior notice that the district court would impose a certain condition of supervised release. *See United States v. Sofsky*, 287 F.3d 122, 125–26 (2d Cir. 2002). We have applied the relaxed standard in some cases, *see, e.g.*, *United States v. Haverkamp*, 958 F.3d 145, 149 (2d Cir. 2020), but not others, *see, e.g.*, *Broxmeyer*, 699 F.3d at 279, and have "questioned" whether it is appropriate in every appeal involving an unpreserved sentencing objection, *United States v. Ramos*, 979 F.3d 994, 998 n.2 (2d Cir. 2020). We have noted (albeit in a summary order) that it is not clear whether our relaxed practice survived the Supreme Court's decision in *Davis*, 140 S. Ct. at 1061–62, which relied on the language of Fed. R. Crim. P. 52(b). *United States v. Belfon*, No. 21-1444, 2023 WL 2342688, at *2 n.4 (2d Cir. Mar. 3, 2023) (summary order). We need not explore the issue further because no matter what flavor of plain error review might apply, Osuba's claims fail.

[we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). A finding of clear error is warranted only when "we are left with the definite and firm conviction that a mistake has been committed." *United States v. Mattis*, 963 F.3d 285, 291 (2d Cir. 2020).

Section 4B1.5(b)(1) of the U.S. Sentencing Guidelines provides that when "the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct," the court should add five levels to the previously calculated offense level.[7] A defendant has engaged in the necessary pattern of activity if "on at least two separate occasions, [he] engaged in prohibited sexual conduct with a minor." U.S.S.G. § 4B1.5 application n.4(B)(i).[8] At least one of those acts "can

---

[7] A "covered sex crime" includes a violation of 18 U.S.C. § 2251(a). U.S.S.G. § 4B1.5 application n.2.

[8] "[P]rohibited sexual conduct" includes offenses under chapters 117, 109A, and 110 of Title 18; it also includes state offenses and other conduct that would have fallen under those chapters had it taken place in an area under federal jurisdiction. U.S.S.G. § 4B1.5 application n.4(A); 18 U.S.C. § 2426(b)(1). Osuba does

be the crime of conviction." *United States v. Broxmeyer*, 699 F.3d 265, 286 (2d Cir. 2012). The district court found that Osuba had engaged in prohibited sexual conduct with a minor on at least two occasions: the conduct underlying Count One and the abuse of E.

The district court did not clearly err in finding that Osuba sexually abused E. Several pieces of evidence supported that finding. Osuba admitted to investigators that he fantasized about having sex with E. Over Kik, he gave Lisbet Fjostad graphic details of his abuse (which she passed on to investigators). E confirmed Osuba's claims when she told investigators about episodes of sexual contact with Osuba, the details of which tracked Osuba's messages to Fjostad. And E's brother partially corroborated E's statements when he described Osuba's use of a device that matched the description given by E.

The countervailing evidence to which Osuba points is insufficient to demonstrate clear error. It is true that E initially told

not dispute that had he abused E as the district court found, that abuse would have constituted prohibited sexual conduct.

25

interviewers that no one had ever touched her inappropriately, and that B initially described the story of the device as "a lie." But it is hardly surprising that young children would be reluctant to describe sexual abuse when first asked about it. And in any event, the mere presence of evidence pointing in both directions does not establish clear error, because when "there are two permissible views of the evidence, the district court's choice between them cannot be deemed clearly erroneous." *United States v. Ruggiero*, 100 F.3d 284, 291 (2d Cir. 1996) (citation and internal quotation marks omitted).

Osuba also argues that when a child sexual abuse case turns on the relative credibility of the accuser and the accused, the factfinder is required to vigorously examine the testimony and other evidence— scrutiny he claims was lacking here. But the cases on which Osuba relies largely involve claims that a defense lawyer was ineffective in failing to vigorously challenge inculpatory evidence at trial. *See, e.g.*, *Gersten v. Senkowski*, 426 F.3d 588, 608 (2d Cir. 2005). The standards

26

they set out do not apply to the district court's evaluation of the facts at sentencing.[9] There is a single standard of review for such factfinding: clear error. Because sufficient evidence supported the district court's finding that Osuba abused E, we cannot form a "definite and firm conviction" that the district court erred.[10] *Mattis*, 963 F.3d at 291.

[9] Osuba also points to *Pavel v. Hollins*, in which we noted certain "indicia of false allegations" in child abuse cases described in publicly available guidelines of the American Academy of Child and Adolescent Psychiatry, including (1) that a parent first suggested to a third party that her children were being abused, (2) that the allegedly abused child was a pre-schooler, and (3) that there was an ongoing custody battle between the parent who raised the suggestion of abuse and the parent accused of abusing the child. 261 F.3d 210, 226 & n.19 (2d Cir. 2001). Those are, of course, factors that a party might raise to the factfinder, but we have never required district courts to recite every potentially relevant factor when making factual findings, especially when those findings are adopted from a PSR. *See United States v. Watkins*, 667 F.3d 254, 266 (2d Cir. 2012) (when a district court adopts the factual findings of a defendant's PSR it "is not required explicitly to provide any further analysis").

[10] Osuba also argues that the PSR included an erroneous finding that because he created two videos of himself masturbating while his minor victim slept, those two videos could count as separate occasions to satisfy § 4B1.5(b). Because we hold that the district court did not err in finding that Osuba abused E, we need not reach this argument.

The sufficiency of that finding also means we need not reach Osuba's arguments concerning his alleged abuse of two other children. Although the PSR included evidence that Osuba had sexually abused two minors in addition to E, its application of § 4B1.5(b)(1) was predicated solely on the conduct covered by Count

As a fallback, Osuba argues that the district court abused its discretion by failing to hold an evidentiary hearing on the factual findings in the PSR. But a full-blown evidentiary hearing is not always required to resolve factual disputes at sentencing; the district court has discretion to determine the form and extent of any contested factfinding procedure. *See United States v. Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979). It is enough if the defendant has "some opportunity to rebut the Government's allegations," and Osuba availed himself of just such an opportunity when he vigorously disputed the PSR's findings in his sentencing memorandum. *United States v. Phillips*, 431 F.3d 86, 93 (2d Cir. 2005) (internal quotation marks omitted).

Osuba's final argument is that the district court erred by not specifying the state or federal statutes that criminalized his alleged

One and the abuse of E. The district court referenced evidence concerning the two other children when discussing the enhancement, but its express adoption of the Guidelines calculation in the PSR leaves some ambiguity about the extent of the court's findings. Because we affirm on the basis of Osuba's offense conduct plus his abuse of E, we need not consider the evidence concerning other children.

28

abuse of E. We are not persuaded. In *Phillips*, we held that to "justify the application of § 4B1.5(b), the district court must explicitly state which statutory offenses constitute the 'prohibited sexual conduct.'" 431 F.3d at 94. Without specificity, we explained, the Court might be unable to determine "whether the conduct was prohibited by law and covered by § 4B1.5(b)." *Id*. The *Phillips* Court was especially concerned because the case involved juvenile sex crimes, an area in which the category of covered offenses is "nuanced." *Id.* Here, neither the PSR nor the district court specified the state or federal statutes that Osuba violated. Osuba did not object in the district court, and our review is thus for plain error. *See Broxmeyer*, 699 F.3d at 279 (plain error review applies to forfeited procedural challenge to fact-finding at sentencing).

Osuba cannot meet this standard. The district court's failure to cite specific statutory provisions did not affect the outcome of the proceedings, and thus did not affect Osuba's substantial rights. The

29

concern that motivated the *Phillips* Court—the complexity of statutes governing sex crimes by juveniles—is absent here, as the uncharged conduct was plainly prohibited by New York law, which defines first-degree sexual abuse to include "sexual contact" with someone "less than eleven years old."  N.Y. Penal Law § 130.65(3).[11]

## C.    Substantive Reasonableness

Having determined that there was no procedural error, we must "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard."  *Gall v. United States*, 552 U.S. 38, 51 (2007).  A sentence is substantively unreasonable when it "cannot be located within the range of permissible decisions," because it is "shockingly high, shockingly low, or otherwise unsupportable as a matter of law."  *Cavera*, 550 F.3d at 190 (first quotation); *United States v. Martinez*, 991 F.3d 347, 359 (2d Cir. 2021)

---

[11] "Sexual contact" includes "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party."  N.Y. Penal Law § 130.00(3).

30

(second quotation). Substantive challenges are assessed based on "the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *Cavera*, 550 F.3d at 190.

Osuba received a within-Guidelines, statutory-maximum sentence of 70 years of imprisonment. That sentence, though undoubtedly severe, falls within the range of sentences we have upheld in child pornography cases—particularly those involving defendants who sexually molest children. In *United States v. Brown*, 843 F.3d 74 (2d Cir. 2016), for example, we upheld a 60-year sentence for three counts of production and two counts of possession of child pornography. As in *Brown*, Osuba had repeated sexual contact with at least one minor victim, and the fact that a victim was "asleep when some of the . . . videos were taken of [her] does not . . . make [the defendant's] conduct any less serious." *Id.* at 84.

Osuba points to a case in which an offender received a shorter sentence for sex crimes that were, in Osuba's view, graver than those at issue here. *See United States v. Muzio*, 966 F.3d 61 (2d Cir. 2020) (thirty-five-year sentence where defendant manipulated at least fourteen minor girls into producing child pornography). But even setting aside the inherent difficulty of comparing such divergent criminal conduct, these judgments are chiefly committed to the district court's considerable discretion. *See United States v. Jones*, 531 F.3d 163, 174 (2d Cir. 2008) (noting that "even experienced district judges may reasonably differ" over sentencing, and "[r]arely, if ever, do the pertinent facts dictate one and only one appropriate sentence"). We see no indication that the district court overstepped the mark here.

Osuba also challenges the district court's balancing of the sentencing factors set out in 18 U.S.C. § 3553(a). But on this point he simply repeats an argument we have already rejected: that the district

court erred in finding that he had abused E. And in any event, the district court explained that a 70-year sentence was necessary because Osuba was a "danger to minors and the public in general both for hands-on offenses and possession and distribution of child pornography." App'x 209. The court acknowledged that Osuba had apologized—"You say you're sorry . . . . I believe that you believe that"—but made a factual finding that Osuba had not recognized the wrongfulness of his conduct or expressed remorse before his statement at sentencing. *Id.* at 199, 209. More important, the court concluded that above all else, its sentence needed to protect the public, deter Osuba, and deter others. *See Cavera*, 550 F.3d at 189 ("[W]e will not substitute our own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case.").

## III.   Conclusion

In sum, we hold as follows:

1. There was sufficient evidence for a rational jury to conclude, beyond a reasonable doubt, that Osuba "use[d]" a minor "to engage in . . . sexually explicit conduct" under 18 U.S.C. § 2251(a) when he filmed himself masturbating near the victim, directed his conduct toward her, and framed the visual depiction to show that she was a passive participant in his sexual activity.

2. The district court did not clearly err in applying the five-level repeat-and-dangerous-offender enhancement because sufficient evidence supported the finding that Osuba abused E.

3. Osuba's sentence was substantively reasonable.

We therefore **AFFIRM** the judgment of the district court.