23-7275-cr
*United States v. Langhorne*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of November, two thousand twenty-five.

Present:

> WILLIAM J. NARDINI
> EUNICE C. LEE,
> SARAH A. L. MERRIAM,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

　　　　　　*Appellee*,

　　　v.                                                                23-7275-cr

TORRANCE LANGHORNE, AKA FELLA,

　　　　　*Defendant-Appellant*.*

---

| | |
|---|---|
| For Defendant-Appellant: | Torrance Langhorne, *pro se*, Bellport, New York. |
| For Appellee: | Amy Busa, Andrew P. Wenzel, Michael R. Maffei, Assistant United States Attorneys, *for* John J. Durham, United States Attorney for the Eastern District of New York, Central Islip, NY. |

---

* The Clerk of Court is respectfully directed to amend the caption as set forth above.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Torrance Langhorne appeals from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *District Judge*) entered on September 29, 2023, sentencing him to five concurrent 66-month terms of imprisonment, to be followed by three years of supervised release. This case arises from Langhorne's distribution of cocaine base, commonly known as crack, in Long Island between July 2019 and January 2020. Langhorne was convicted at trial on five counts, including four counts of distribution and possession with intent to distribute cocaine base, which were premised on four controlled purchases of crack by confidential informants; and one count of possession with intent to distribute cocaine base, which was based on the discovery of a bag of crack in a wastewater pipe of Langhorne's home on January 16, 2020. All five counts alleged violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Langhorne now appeals, challenging all five counts of conviction, as well as his sentence. We assume the parties' familiarity with the case.[1]

---

[1] Langhorne appeared *pro se* during an initial portion of his trial, but was represented by counsel for the remaining proceedings in the district court. Subsequently, on January 17, 2025, then-President Biden signed a commutation of Langhorne's term of imprisonment, but left in place his three-year term of supervision. *United States v. Langhorne*, 20-cr-235, Dkt. 178 (E.D.N.Y. Jan. 21, 2025). On appeal, two different counsel filed opening briefs on behalf of Langhorne. He then informed the Court, through counsel, that he wished to proceed *pro se*. The Court ordered Langhorne to advise the Court in writing by October 14, 2025, whether he was withdrawing the appeal or continuing to pursue the appeal *pro se*. If proceeding *pro se*, Langhorne was directed to state whether he intended to rely on the briefs previously filed on his behalf or would file a new *pro se* brief, which would be due on October 14, 2025. The Court notified Langhorne that if he did not respond to its order, the Court would take the case on submission and decide the appeal on the previously filed briefs in the ordinary course. Langhorne has not responded to the Court's order. Accordingly, we now proceed to determine Langhorne's appeal based on those counseled briefs.

*First*, Langhorne challenges the sufficiency of the evidence supporting each of his convictions; we review such claims *de novo*, drawing "all permissible inferences in favor of the government and resolv[ing] all issues of credibility in favor of the jury's verdict." *United States v. Osuba*, 67 F.4th 56, 61 (2d Cir. 2023).[2] Langhorne has failed to meet the "heavy burden" required to sustain a sufficiency challenge, *id.*, because his convictions were supported by an overwhelming body of evidence. As to the first four counts, the Government presented substantial evidence at trial that Langhorne sold crack to confidential informant Anthony Miller on December 19 and 23, 2019, and to confidential informant George Filla on January 9 and 10, 2020. This evidence included Miller's and Filla's testimony that they purchased crack from Langhorne on these dates as part of controlled buys; Riverhead Police Department Detective Patrick McDermott's testimony that Miller and Filla returned from the controlled buys with crack; video and audio recordings of the purchases; and crime laboratory reports confirming that the substances that Miller and Filla bought contained cocaine base. As to the fifth count, the Government presented substantial evidence that Langhorne possessed and intended to distribute the bag containing cocaine base discovered at his home during a January 16, 2020, search. This evidence included Suffolk County Detective John Gang's testimony that he cut open a pipe directly under the toilet in the upstairs bathroom of Langhorne's house and found a bag containing an off-white, rock-like substance; McDermott's and Gang's testimony that the conditions of the upstairs bathroom—including water splashed around the base of the toilet bowl, a low water level in the toilet, and a knocked-over toilet scrub brush—were consistent with drugs having been hastily flushed down the toilet; testimony from Langhorne's friend that Langhorne admitted flushing

---

[2] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

crack down the toilet during the search; testimony from Miller, Filla, and another person familiar with Langhorne's drug transactions that Langhorne cooked and sold crack out of his home; and a lab report confirming that the bag recovered from the waste pipe contained cocaine base. This evidence, assessed in the aggregate, was enough for a rational jury to conclude that Langhorne was guilty beyond a reasonable doubt on all counts.

*Second*, we turn to Langhorne's argument that the district court improperly allowed Detective Gang to offer certain testimony at trial. We review the admission of the challenged testimony for plain error because Langhorne did not raise this objection during the trial. *See United States v. Simels*, 654 F.3d 161, 168 (2d Cir. 2011) (holding that unpreserved objections to evidentiary rulings are subject to review for plain error pursuant to Fed. R. Crim. P. 52(b)). At trial, the defense advanced the theory that the bag of crack found in the waste pipe could have come from the bathroom downstairs, where a guest was staying, rather than upstairs where Langhorne was found during the search. To rebut this theory, the Government elicited testimony from Detective Gang that he did not suspect that the bag could have been flushed from the toilet in the basement bathroom because, to come from there, the bag would have been pumped upward, and a pump of this nature would have shredded the bag. Langhorne now argues that this was expert testimony that failed to satisfy the requirements of Federal Rule of Evidence 702, and therefore that it should not have been admitted. We need not determine whether this testimony violated Rule 702 because any hypothetical error was harmless. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Hamilton*, 538 F.3d 162, 174 (2d Cir. 2008) (holding that, even if the district court erred in permitting expert testimony by a law enforcement witness without complying with, *inter alia*, the dictates of Rule 702, any error was harmless). Even if the district

4

court had excluded this testimony, there still would have been a substantial basis for the jury to conclude—based on Langhorne's admission to his friend, as well as the condition of the upstairs bathroom and common-sense understanding of the law of gravity—that the bag came down the pipe from the upstairs bathroom.

*Third*, Langhorne argues that the district court violated his rights under the Confrontation Clause of the Sixth Amendment by prohibiting him from cross-examining Detective McDermott using two civil claims that Langhorne filed against McDermott over damages purportedly caused during the January 16, 2020, search of Langhorne's home described above (the "IAB Complaint and Notice of Claim"). While the Confrontation Clause guarantees a criminal defendant a "meaningful opportunity to cross-examine witnesses against him," it does not require "unfettered cross-examination," and trial judges have "broad discretion to impose reasonable limits on cross-examination based on concerns about confusion of the issues or interrogation that is repetitive or only marginally relevant." *Alvarez v. Ercole*, 763 F.3d 223, 229–30 (2d Cir. 2014). Langhorne argues that if he had cross-examined McDermott about the IAB Complaint and Notice of Claim, he would have shown that McDermott was unduly motivated to initiate charges against Langhorne[3] and that cocaine base was not actually found during the search of his home. But McDermott was only an investigator who had no authority to initiate the charges against Langhorne; and even if he had such authority, that fact would have had no bearing on whether crack had been found by other law enforcement agents during the search. Indeed, it was Detective Gang (not McDermott) who cut open the waste pipe, found the bag containing cocaine base, processed this evidence, and delivered it to the lab for testing. Accordingly, Langhorne has failed

---

[3] Langhorne was not arrested at the time of the search; he was indicted in July 2020 and arrested in September 2020.

5

to show that the limitations imposed by the district court deprived him of a meaningful opportunity to cross-examine McDermott and thereby violated his Confrontation Clause rights.

*Fourth*, Langhorne argues that his trial counsel was constitutionally ineffective; we review this claim *de novo*. *See United States v. Melhuish*, 6 F.4th 380, 392 (2d Cir. 2021). Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant advancing an ineffective-assistance claim must establish that (1) "in light of all the circumstances, the acts or omissions of trial counsel were outside the wide range of professionally competent assistance," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Melhuish*, 6 F.4th at 393. Langhorne has failed to establish the prejudice prong for any of his trial counsel's purported deficiencies. Langhorne first argues that his attorney was ineffective because he failed to object to Detective Gang's testimony about septic pumps, and because during summations he failed to address the discovery of the bag of crack in the waste pipe. But as we have already explained, there was overwhelming evidence that Langhorne had flushed the bag of drugs down the toilet in the upstairs bathroom, so there is no reasonable probability that but for either of these alleged deficiencies the jury's verdict on the fifth count would have been different. Langhorne also challenges his lawyer's alleged failure to investigate the Government's disclosure that a witness had reported that a person known as "Silver" was selling crack from Langhorne's address (which was on "Silver Road"), and that the Government had no information reflecting that Langhorne had been referred to by that nickname. But even assuming such a failure to investigate, Langhorne has failed to establish what his counsel would have uncovered had he pursued this point. Langhorne has failed to show a reasonable probability that "Silver" was actually someone other than himself, much less that his attorney would have uncovered evidence that the confidential informants had made their controlled purchases from this other person.

6

Finally, Langhorne faults his counsel for mistakenly asking him about a supposed 2008 conviction for selling narcotics during Langhorne's direct testimony. This, he argues, undermined the district court's pre-trial ruling that the only prior conviction that the Government could introduce at trial to impeach Langhorne's testimony (should he elect to testify) pursuant to Federal Rule of Evidence 609 was Langhorne's 2011 conviction for Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16(1)). On cross-examination, the Government asked Langhorne about the 2011 conviction, and the jury was thus informed that Langhorne had two prior convictions related to selling drugs, even though the district court had planned to permit the Government to make reference to only one. Furthermore, Langhorne did not in fact have a 2008 conviction; his most recent conviction before the 2011 conviction actually occurred in 2005. Notwithstanding this confusion, we conclude that defense counsel's elicitation of this misdated conviction did not prejudice Langhorne. Given the overwhelming evidence of Langhorne's guilt presented at trial, there is no reasonable likelihood that mention of this one additional conviction had any effect on the jury's verdicts.

*Finally*, Langhorne challenges the procedural reasonableness of his prison sentence, but this claim has been mooted by his release from incarceration. *See United States v. Simmons*, 150 F.4th 126, 134-35 (2d Cir. 2025). While a challenge to a term of supervision may sometimes remain live following a defendant's release from prison, *see id.*, Langhorne does not challenge the term or conditions of supervised release.

7

We have considered Langhorne's remaining arguments and find them unpersuasive. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk