24-1769-cr
*United States v. Whitehead*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of January, two thousand twenty-six.

Present:

> GERARD E. LYNCH,
> WILLIAM J. NARDINI,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

        *Appellee*,

    v.                                    24-1769-cr

LAMOR WHITEHEAD,

        *Defendant-Appellant*.

---

| | |
|---|---|
| For Defendant-Appellant: | JONATHAN I. EDELSTEIN, Edelstein & Grossman, New York, NY; Daniel S. Noble, Vlad Shafran, Oleg M. Shik, Krieger Lewin LLP, New York, NY |
| For Appellee: | JANE KIM (Jessica Greenwood and Jacob R. Fiddelman, *on the brief*), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY |

Appeal from a judgment of the United States District Court for the Southern District of New York (Lorna G. Schofield, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Lamor Whitehead appeals from a criminal judgment entered on June 17, 2024, in the United States District Court for the Southern District of New York. A jury returned guilty verdicts against Whitehead on the following counts: (1) wire fraud, in violation of 18 U.S.C. § 1343; (2) attempted wire fraud, in violation of 18 U.S.C. §§ 1343, 1349; (3) attempted Hobbs Act extortion, in violation of 18 U.S.C. § 1951; (4) making a false statement, in violation of 18 U.S.C. § 1001; and (5) wire fraud, in violation of 18 U.S.C. § 1343. The district court sentenced him to an aggregate prison term of 108 months, to be followed by three years of supervised release. Whitehead now appeals, challenging all five counts of conviction as well as his sentence. We assume the parties' familiarity with the case, and we discuss in detail only Whitehead's principal arguments.

## I.  Brandon Belmonte's Testimony

We first address Whitehead's challenge to the district court's exclusion of testimony from a potential witness, Brandon Belmonte, who invoked his Fifth Amendment privilege against self-incrimination.

Belmonte was the owner of an autobody shop in the Bronx, and the victim of Whitehead's attempted fraud in Count Two and attempted extortion in Count Three. Whitehead subpoenaed Belmonte to testify at trial, but Belmonte (outside the presence of the jury) repeatedly refused to answer questions based on the Fifth Amendment, in light of charges pending against him in the Eastern District of New York. Belmonte declined to answer when asked about, for example, his

2

body shop, his relationship with Whitehead, and his dealings with the FBI. He also affirmed that he would continue to decline to answer any substantive question about Whitehead. Based on this *voir dire*, the district court excluded Belmonte's testimony—in which he would have simply repeated his invocation of the Fifth Amendment—under Federal Rule of Evidence 403 on the ground that the prejudicial value of his invocation substantially outweighed any probative value.

During trial, the Government introduced recorded conversations between Whitehead and Belmonte (who was then cooperating with the FBI) to prove both offenses; the district court gave the jury a limiting instruction that Belmonte's statements on those tapes were to be considered not for their truth, but instead only (1) to provide context for Whitehead's statements, (2) for their effect on Whitehead as the listener, and (3) as statements that Whitehead adopted based on his responses or objections (or lack thereof) to Belmonte's statements.

Whitehead now argues that Belmonte could not legitimately invoke his Fifth Amendment privilege against self-incrimination, and that the district court's decision not to require Belmonte's testimony violated Whitehead's rights to present a defense, to call witnesses, and to confront adverse witnesses. We need not decide whether Belmonte's blanket invocation of his Fifth Amendment privilege might have been overbroad in some respects, because Whitehead has failed to show that the district court's ruling violated his constitutional rights or Rule 403.

*First*, the district court's exclusion of Belmonte's testimony did not violate Whitehead's rights under the Confrontation Clause. The Confrontation Clause of the Sixth Amendment provides that a criminal defendant has the right "to be confronted with the witnesses against him," U.S. CONST., amend VI., and the right of confrontation includes the right to cross-examine adverse

witnesses, *Alvarez v. Ercole*, 763 F.3d 223, 229–30 (2d Cir. 2014).[1] But Belmonte was not a witness against Whitehead. The Government did not call Belmonte as a witness, and the jury heard only his recorded statements, which—in keeping with the district court's limiting instruction—could not be considered for their truth. Because the recorded statements by Belmonte were not admitted for their truth, the Confrontation Clause did not confer upon Whitehead a constitutional right to cross-examine Belmonte about those statements. *Cf. United States v. Logan*, 419 F.3d 172, 177 (2d Cir. 2005) ("The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

*Second*, Whitehead has not plausibly shown that Belmonte's testimony would have been material and favorable to his defense, nor has he shown a reasonable likelihood that the jury would have returned a different verdict had Belmonte testified. Accordingly, he has not demonstrated that the district court violated his right to call witnesses under the Compulsory Process Clause of the Sixth Amendment or otherwise to present a meaningful defense under the Due Process Clause of the Fifth Amendment. *See United States v. Persico,* 645 F.3d 85, 113 (2d Cir. 2011) (requiring defendant to "make a plausible showing that the testimony would have been material and favorable," and that "there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact," to show a Sixth Amendment violation); *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001) (explaining that when facing a due process claim, a court must consider "whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist"). Whitehead argues that, for example, he could have questioned Belmonte about the authenticity of the recordings introduced into evidence. But Whitehead offers

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

no plausible basis to believe that Belmonte would have testified that the recordings were somehow doctored. Whitehead also argues that he would have asked Belmonte about his assistance to the FBI and role in initiating the investigation into Whitehead. Whitehead has not, however, articulated how Belmonte's responses on these topics or any other questions that his counsel posed during *voir dire* would have shed any light (much less an exculpatory light) on Whitehead's guilt, such as by illuminating his actions or intent when attempting to defraud or extort Belmonte; and we can discern no such relevance.

Given the harmlessness of the district court's decision to permit Belmonte's blanket invocation of his Fifth Amendment right, the district court did not further abuse its discretion in excluding Belmonte's testimony under Rule 403. The district court has discretion to prevent a party from calling a witness solely to have him invoke the Fifth Amendment privilege against self-incrimination in front of the jury. *See United States v. Deutsch*, 987 F.2d 878, 883 (2d Cir. 1993). And even if the district court abused its discretion, for the reasons stated above, any error was harmless. *See United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) ("[E]videntiary rulings are subject to harmless error analysis.").

## II. Sufficiency of the Evidence

We review *de novo* Whitehead's challenge to the sufficiency of the evidence supporting his convictions on Counts Two, Three, and Four. *United States v. Osuba*, 67 F.4th 56, 61 (2d Cir. 2023). Whitehead fails to meet the "heavy burden" required to overturn any of these counts. *Id*.

Starting with Count Two, which charged Whitehead with attempting to defraud Belmonte out of money and real property, Whitehead argues that there was insufficient evidence that he took

5

a "substantial step" to commit the fraud.[2]  A "substantial step" is "something more than mere preparation" but "less than the last act necessary before the actual commission of the substantive crime." *United States v. Farhane*, 634 F.3d 127, 147 (2d Cir. 2011).  Here, Whitehead asked Belmonte to transfer to him real property and $500,000, based on Whitehead's false representation that he could leverage his ownership of that property to get development assistance from New York City Mayor Eric Adams.  Whitehead's representations and requests amounted to substantial steps because all that remained to complete the fraud was for Belmonte to give the property or the money to Whitehead.  Whitehead had done all that he could to complete the crime.

Turning to Count Three, we reject Whitehead's contention that the Government failed to establish an interstate nexus for Whitehead's attempted extortion of Belmonte.  One element of Hobbs Act extortion is that the conduct at issue affect interstate commerce.  *United States v. Elias*, 285 F.3d 183, 188 (2d Cir. 2002).  The required showing is *de minimis* and entails only "a very slight effect on interstate commerce." *United States v. Perrotta*, 313 F.3d 33, 36–37 (2d Cir. 2002).  At trial, the Government established the following: In February 2022, Whitehead sent his wife's Mercedes to Belmonte's autobody shop in the Bronx; at the time, Whitehead resided in Paramus, New Jersey; Belmonte sent a rental car for Whitehead's wife to use while he worked on her car; and the rental car did not work and Whitehead spent $5,000 on a replacement.  Whitehead later threatened violence against Belmonte to induce Belmonte to repay him the $5,000.  A rational jury could have concluded that the interstate nexus requirement was satisfied because Whitehead demanded a payment from Belmonte as the owner of an autobody shop that operated in interstate commerce, and that the payment—if made as intended by Whitehead—would foreseeably have

---

[2] Whitehead does not dispute that the jury heard sufficient evidence to permit it to conclude beyond a reasonable doubt that Whitehead intended to commit the crime of wire fraud, the other element required for conviction of an attempt to commit that offense.

come from the assets of the shop. *See, e.g., Elias,* 285 F.3d at 189 (holding that the interstate nexus was satisfied by evidence that the defendants robbed a grocery store that sold items produced outside New York State). Whitehead points out that the $5,000 that was ultimately paid to him by Belmonte (then a cooperating witness) came from the FBI rather than from the coffers of the body shop. But the source of the funds actually paid in response to his threats is irrelevant; Whitehead was charged with and convicted of only *attempted* extortion, and his threats were clearly directed at Belmonte as owner of the body shop.

As to Count Four, we reject Whitehead's argument that venue does not lie in the Southern District of New York.[3] Whitehead's false statement that he did not possess a second cell phone, made to Manhattan-based FBI agents executing a search warrant in New Jersey, had the "natural tendency to influence . . . the decision[s] of" investigators in Manhattan. *United States v. Coplan,* 703 F.3d 46, 79 (2d Cir. 2012). Indeed, one of the FBI agents who participated in the search testified at trial that had Whitehead told the truth, the agent would "have called the AUSA I was working with to discuss what our options were in order to collect evidence that might be on that other phone." App'x at 979. Consequently, the AUSA in Manhattan could have immediately sought a second warrant to obtain Whitehead's phone, or devised another route for seizing the phone. Thus, Whitehead's false statement had a sufficient effect in the Southern District of New York to establish venue there.

### III.    Other Bad-Acts Evidence

We similarly find no merit in Whitehead's argument that the district court abused its discretion in permitting the Government to introduce evidence of several uncharged fraudulent

---

[3] The Government argues that Whitehead waived his venue challenge. We assume, without deciding, that he did not.

7

loan applications under Federal Rules of Evidence 403 and 404(b). *See United States v. Carlton*, 534 F.3d 97, 101–02 (2d Cir. 2008) (reviewing evidentiary rulings for abuse of discretion).

Count Five charged Whitehead with submitting a $250,000 loan application to Fundera, an online loan broker, accompanied by fabricated bank statements from Wells Fargo that purported to show significant account balances. During his trial testimony, Whitehead claimed that someone else must have submitted that application. But the Government introduced evidence that Whitehead had repeatedly made similar fraudulent loan applications to other lenders. These other applications included personal information from Whitehead (such as his personal email address and phone number) and relied on falsified documents with striking similarities to those sent to Fundera (for example, bank statements purporting to be from the same accounts held in the name of Whitehead or his company, and sometimes even with the same false account balance).

The district court acted well within its discretion when it admitted evidence of these other fraudulent applications under Rule 404(b) as probative of Whitehead's "knowledge, intent, and modus operandi," because their similarities to the Fundera application and ties to Whitehead strongly tended to show that it was Whitehead (and not some other person) who had submitted the Fundera application. *See Carlton*, 534 F.3d at 101–02 (recognizing that identity can be established through modus operandi); *see also United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) ("[E]vidence of other acts 'may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'") (quoting Fed. R. Evid. 404(b)(2)). The district court gave a sound limiting instruction on this point, allowing the jury to consider the evidence for purposes including "identity," and cautioning them not to consider the evidence for any improper purpose, such as whether Whitehead had a general propensity to engage in fraud. App'x at 1447. Although Whitehead contends that

8

at most the district court should have admitted only a small subset of these other fraudulent applications, we discern no abuse of discretion because the overall pattern of similar conduct, performed over a three-year period, was highly probative to show that it must have been Whitehead who submitted the distinctive documents in this case. *See Carlton*, 534 F.3d at 101–02 (relying on similarities of prior robberies, as well as "the existence of a pattern," when affirming admission of evidence under Rule 404(b)).

IV.     **Prosecutorial Statements During the Summation**

We are unpersuaded by Whitehead's contention that the Government committed prosecutorial misconduct during its summation by referencing Whitehead's "lies" and "cons," and calling Whitehead a "con man."

Because Whitehead failed to raise this objection in the district court, reversal is proper only if he can demonstrate that the challenged statements amount to "flagrant abuse," *United States v. Araujo*, 79 F.3d 7, 9 (2d Cir. 1996), and that such abuse "seriously affects the fairness, integrity, or public reputation of judicial proceedings, and causes substantial prejudice to the defendant," *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012).

The Government committed no misconduct here, flagrant or otherwise. Four of the charges against Whitehead were expressly predicated on the theory that he had lied—to the victims of the frauds charged in Counts One, Two, and Five, and to the FBI agents to whom he made a false statement in Count Four. The Government's references to Whitehead's "lies" and "cons" were nothing more than argumentative references tying the evidence to offenses that charged him with making false and deceitful statements. Moreover, Whitehead's decision to testify put his credibility directly in dispute, and we have explained that prosecutors may use the words "'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue," and

9

that such words are "ordinarily not improper unless such use is excessive or is likely to be inflammatory." *United States v. Coriaty*, 300 F.3d 244, 255 (2d Cir. 2002). Likewise, the Government permissibly used the worth "truth" to describe its view of what the evidence showed, in contrast to what Whitehead falsely represented to his victims, or testified to the jury. The Government was required to prove that Whitehead's statements to the fraud victims and the FBI were inconsistent with the "truth," and the prosecutor's statements in context were clearly assertions that the evidence established that the "truth" was not what Whitehead claimed it was, not the injection of the prosecutor's own views or vouching for the government's case. The Government's use of such terminology here thus did not exceed the bounds of permissible advocacy.

## V. Uncalled Witness Instruction

Whitehead challenges the district court's inclusion of the following relatively standard "uncalled witness" instruction in the final jury charge:

> There are people who you heard about during the trial but who did not appear here to testify. I instruct you that each party had an opportunity or lack of opportunity to obtain the testimony of any of these witnesses. Therefore, you should not draw any inference or reach any conclusions about why neither party called a witness or what that witness would have testified if they had been called. Their absence should not affect your judgment in any way.

App'x at 1431. Whitehead now argues that this instruction impermissibly invited the jury to infer that he had made a strategic decision not to call certain witnesses for fear that their testimony would incriminate him. But we have repeatedly endorsed the quoted instruction precisely because it tells the jury, in no uncertain terms, *not* to draw any such inferences. *See United States v. Johnson*, 117 F.4th 28, 49–50 (2d Cir. 2024). Moreover, contrary to Whitehead's contention, the instruction was not mistaken to the extent it implied that Belmonte was equally unavailable to both Whitehead and the Government. Belmonte's invocation of his Fifth Amendment rights rendered

10

him unavailable to both sides.  *See United States v. Miller*, 954 F.3d 551, 561 (2d Cir. 2020) (observing that a witness is unavailable when he "properly invokes his Fifth Amendment right against self-incrimination").  Thus, the district court did not abuse its discretion in giving the challenged instruction.

## VI.     Sophisticated Means Enhancement

Finally, we find no merit in Whitehead's contention that the district court erred in imposing a two-level "sophisticated means" enhancement under Section 2B1.1(b)(10)(C) of the United States Sentencing Guidelines.  Whitehead's fraud on Fundera involved meticulously forged bank account statements, some of which reflected non-existent accounts, as well as tax documents. These actions were "especially complex or especially intricate," *see* U.S.S.G. § 2B1.1 app n. 9(B), and involved the creation and use of false documents, which we have recognized as "indicia of the sophistication of an offense."  *United States v. Fofanah*, 765 F.3d 141, 146 (2d Cir. 2014). Whitehead argues that his misconduct was not especially intricate, and that nearly any wire fraud scheme involves making misrepresentations to a lender.  But Whitehead did more than just lie to a bank; his submission of carefully falsified financial documents went sufficiently beyond the level of a garden-variety fraud to warrant the challenged enhancement.

\*          \*          \*

We have considered Whitehead's remaining arguments and find them unpersuasive.  For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

11